as United States v. Farias-Contreras, and we will be hearing that via video. Mr. Hormel? Yes, Your Honor. Thank you. May it please the Court, Ms. Bonsgard. I represent Mr. Farias-Contreras in this appeal, and there's one issue, and the issue is whether or not the government implicitly breached its plea agreement by writing passionate and very specific, extreme comments about the case when they were recommending low-end of the sentencing guidelines in this case, and it seems like this case boils down to the difference between two of the cases that were cited by the party, and that would be United States v. Whitney, 673 Fed 3rd 965, and that's the case that I primarily relied on in the opening brief, and then United States v. Gonzalez Aguilar, 718 Fed 3rd 1185, and I believe this case fits squarely to the United States v. Whitney case. Counsel, let me ask you a question. Sure. At page five of the plea agreement, I think it's page 13 of the excerpts, there's a sentence which says, this statement of facts does not preclude either party from presenting and arguing for sentencing purposes additional facts which are relevant to the guideline computation or sentencing unless otherwise prohibited in this plea agreement. Was that language in the case you're citing? Well, that language about arguing additional facts applies to setting the guideline range, not the ultimate recommendation. Well, that's not what the language that I read says. It says, the statement of facts does not preclude either party from presenting and arguing for sentencing purposes additional facts which are relevant to the guideline computation or sentencing, but my question is, the sentence that I read, was that in the plea agreement in the case that you rely on? No, I don't believe so. At least, let me say this, that provision was not referenced in the case. Whether or not it was in the plea agreement, I don't know. Well, whether it was referenced or not, you don't deny that it's in the plea agreement, right? The language you just cited? Yes. I don't deny that at all. Oh, I'm sorry. You said it wasn't understood. I apologize. Okay. Yes. In this case, the government starts out in a sentencing memorandum recommending 151 months in prison and then immediately turns to, instead of supporting this recommendation, turns to language referencing the scourge that controlled substances have in the community, which is true. It absolutely is a scourge in the community, but the purpose of the sentencing hearing in this case was to support the sentencing recommendation of 151 months. Mr. Farias Contreras has, as seen in the pre-sentence report and through the sentencing hearing, has very serious medical issues, including the fact that he still has to use a catheter, he has to use a brace to walk, he has to help himself, relieve himself in other ways. He was shot multiple times years ago in his back and in his stomach and he's almost paralyzed. He's going to have a rough time in prison. Counsel, even if you could show that there was some breach of the transcript. Correct. And the district judge in sentencing the defendant stated, and this is page 34 of 38 of the transcript, I think it's the excerpts, it's 86. I think the high end is justified for the reasons that I've stated. In brief summary, a huge organization over a long period of time, you were one of the top dogs in it, and so the 188 months, I think, is a fairly low sentence. So one of the things you have to demonstrate is that the outcome would have been different, right? Yes. And given the judge's statement that he thought the sentence he was giving anyway was low and that the plea agreement here talked about the facts, I think, was like 100 tons of weight, 90,000 kilos of converted drug weight. How can you possibly show that even if there was a breach, it made a difference given the judge's questions, the judge's statements, and the judge saying he thought your client was getting a big break anyway with the sentence that was imposed? That is also answered in Whitney, and that's why I believe United States versus Whitney is the case that should be relied on because in criminal cases, when we come into sentencing and plea bargaining and trying to convince clients to take plea bargains and assuring them that the government is going to recommend a certain sentence, if the government doesn't at least put some strength behind the recommendation, some strength behind the recommendation, then there is absolutely no chance. In this case, the recommendation of 151 months, albeit the government doesn't have to enthusiastically recommend 151 months, but the government has to at least explain to the court why 151 months is appropriate. And in this case with the severe... I'm having a problem with that too. Maybe you can point me to the place in the plea agreement. The way I read the plea agreement, the government didn't have to recommend any number at all. As I see the plea agreement, it says the United States agrees not to recommend a sentence in excess of the low end of the guideline range. So the United States didn't have to recommend any number, right, under the plea agreement? If the low end was 151, I believe that would be their obligation. Well, I don't see where it says that. It says here the United States at page 10 of 14, I think of the plea agreement 18, the United States agrees not to recommend a sentence in excess of the low end of the guideline range. Can you tell me where it says the United States has an obligation to recommend a particular sentence? I believe it says as calculated by the United States. Yeah, not to recommend something in excess of what the low end is as calculated by the United States. That doesn't mean they have to recommend it. It just means they can't recommend more than that. The low end of the guideline range as calculated by the United States was 151 months in prison. I believe it goes without saying in that plea agreement that if the low end is calculated as 151 months in prison, that would be the government's did in its sentencing memorandum without referencing that number ever at the sentencing hearing. Well, at the sentencing hearing, they twice said we go with the sentencing number that we put in our memo, right? That's all they said. They didn't say 151 months, and they didn't recommend that it was seeking. In fact, the one mitigating factor that was in the case, present in the case, was the medical conditions. And the government used the medical conditions almost as a way to increase the sentence because of saying that even his medical issues didn't keep him from being this scourge on the community, basically is what they're saying. And the prosecutor also brought up drug trafficking dating way back to 1990 when the pre-sentence report only had drug trafficking to 98. I understand that's a serious character issue, but they're bringing up facts that are beyond those facts that were represented in the PSI and discussed by the district court. Which the plea agreement allows them to do explicitly. But on the recommendation, you or your predecessor could have negotiated a plea agreement which required the government to stand mute at sentencing, right? Does that ever happen in your district? Not often, but it can happen, yes. So it's a possible provision that your predecessor could have tried to negotiate, the government may not have agreed to it, but that could have been in there, right? Or the government will only say a number, but none of that was actually in the plea agreement, right? True, but I believe in this district, it's rarely, or at least maybe 50%, I don't know. There's not always a number in the plea agreement because the parties haven't always agreed to the far more advantageous than an agreement to remain silent. And that, I just, I believe that to be, because the government in its plea agreement by saying we're going to recommend nothing in excess of the low end, I guess, I think it ties them to the low end and it doesn't allow them even though they're allowed to state facts, they're not allowed to state facts that inflame the court. And implicitly seeks a higher sentence than what they've agreed to recommend. And I believe that United States versus Whitney is the case that describes all that. And the defendant should be able to rely on the government's promise to recommend that. Counsel, Judge Gold has a question. Can I interject a question or two? Sure. First of all, I just want to clarify, is it your client's position that your client had a substantial right to have a low end sentencing recommendation? Yes. At 151 months, right? Yes. And the sentence that was imposed ends up being about three years, a little more than three years beyond that, right? That's correct. So, is it your view that your client has got to spend three years extra in prison because the government in substance breached its obligation to recommend a low end sentence? Yes. And further that they included information in both their sentencing memorandum and the sentencing hearing that implicitly urged the court to do that very thing and has increased the sentence. And also, it is under plain air review, right? So, the fourth element of plain air is usually something like that the air, if not corrected, would impugn the integrity fairness, integrity, or reputation of the court. Is that right? Yes, your honor. And that is referenced at page 973 in the Whitney case. Okay. So, now is it your position that whenever the government makes a plea bargain to recommend a low end sentence, a low end guideline sentence, that it impedes the reputation of the court if that's not honored? I believe that that's, I think it depends on case to case, but in this case, there was never any explanation as to why low end of the guideline range of the 151 months was justified in this case. And I believe that really should be a requirement of the United States attorney because they're bargaining with somebody who has very little bargaining power. And so, if a defendant accepts a guilty plea, thinking that the government is going to at least try to justify their sentence, which is low end, and in this case, 151 months, he's at least entitled to hear those words, even though the prosecutor is under no duty to enthusiastically do it, but at least explain to the court why that particular provision in the plea agreement was bargained for and received. And why, in this case, the prosecutor said we were unanimous in the court, unanimous in our office, excuse me. We were unanimous in our office. I don't even understand why Ms. Bonsgard brought into the sentencing hearing discussions within her office because it caused them to question the office's recommendation of the low end guideline. And perhaps we should hear from her since you're over your time as to what in the world was going on that she would bring in office discussions that undermine the 151 month recommendation of the Ms. Bonsgard. Good morning, everybody. May it please the court and counsel. Caitlin Bonsgard on behalf of the United States. I can start with the court's question, if you would like. I think it's pouched in the terms of this case was very unique in front of the district court. Certainly, discussions, inter-office discussions are not something generally bring up to the recommendation of the office. You would stand by it and you would offer some rationale for it to the judge. You wouldn't have your sentencing memorandum be replete with the defendant has done nothing less than pump pure poison into our community and the damages are not limited to in his book, Dreamland. I mean, your whole sentencing memorandum says nothing that supports the 151 month sentence. And it's filled with extraneous material that would justify a district court judge going well beyond it. And in fact, he did quote some of those justifications from your sentencing memorandum in his rationale. And having been a district court judge myself and find this conduct really outrageous. I will respectfully disagree, ma'am, in terms of the government is allowed to advocate for its position. And the government's position here was 151 months. Correct. Yes. 151 months. We couched the beginning of our remarks with it. We couched the end of our remarks with it. But this case was very unique in terms of the level of this defendant's medical conditions. It's very concerning in the PSIR. And so that's coupled with the fact that aren't the medical conditions mitigating. I mean, he was shot. He had serious medical problems. 100%. And that is why there is so much discussion in this case and why it was so unique. It has this juxtaposition of a very significant prolific. Are you referencing your discussions in your office right now in this oral argument? I'm referencing the discussions we had with the district court in sentencing my sentencing materials, as well as the fact that the government has to come up with a recommendation. And you agreed to it in the plea agreement. Correct. We did. And we advocated for that at sentencing. I would note that as Mr. Hormel indicated, that this is seems to be a distinction between Whitney and Aguilar, or excuse me, Gonzalez Aguilar. The government's position is this is very on par with Gonzalez Aguilar. Because if I'm having to, can you slow down a little bit? I'm having trouble hearing. I apologize. If you look at the district court's discussion, the district court said basically came to this sentencing hearing, locked and loaded for a better lack of a better term. The district court indicated off the bat it had questions for the United States. Who was the district court judge? It was Judge Fremming Nielsen. I'm sorry, what's first name? Fremming. F-R-E-M-M-I-N-G. Okay. He's a senior district court judge here presided over the entirety of this conspiracy case. And so his concern referenced or he came to the argument prepared with questions for the United States, and then spent a significant amount of time in his remarks, quoting the PSIR, and the paragraph specifically that concerned the PSIR. So there's this dichotomy of someone with an undeniably significant medical issue, who is engaged and continues to engage in drug trafficking. The judge was also concerned about the other defendants, right? I believe Mr. Stein got 240. That is correct, yes. Josh Stein was a downline customer of Mr. Frias Contreras, but he was a gang member and he had some other aggregating factors in terms of possession of firearms in association with that offense. Counsel, could you explain to me where the stipulation in the plea agreement was the defendant's relevant conduct involved no less than 90,000 kilograms of converted drug weight. In this context, in a base offense level of 38, what does 90,000 kilograms of converted drug weight mean in the context of this case? Certainly. The defendant was involved in methamphetamine and if you have two different controlled substances, you use the drug conversion table in T1.1 to convert those substances into the converted drug weight, and then that amount is what you use to calculate the base offense level. So it converts to 100 tons of drugs? Yes, that is correct. Counsel, I have a couple of questions for you, please. One, I will say, preliminarily I share some of the concerns voiced by Judge Woodlaw as to whether the government met its plea agreement obligations here. So one question I have for you is where in the record does it show that the government recommending the low-end sentence? My understanding of this, and you could correct me if I'm wrong, is that the government in one sentence said we recommend the 151 month sentence, but then followed that with a mountain of other evidence that would in substance urge or support a higher sentence. So what would you point to in the record of the sentencing hearing that you think is most important for your position that the government met its obligations? I would point to the fact we began our remarks with our recommendation for the low-end, and all of the information between those two things provided the framework for that recommendation, meaning, Judge, we think 151 months is appropriate. Here are the considerations we have gone through, again, going back to that dichotomy between the undeniably significant medical conditions, as well as his high level of criminal culpability. So all said and done, all things considered, all the 3553A factors taken into account, we are recommending that low-end guideline range sentence of 151. So I would say the entirety of the remarks from beginning to end would justify the 151 month sentence. I think also importantly, my remarks, the United States' remarks came after the defense again highlighted the significant medical issues, talking about how difficult his time would be in prison, you know, the concerns of that nature, which the district court said that he was very concerned about. So the remarks of the United States were fashioned after the defense remarks, which was asking for about a four-year lesser than sentence than what the United States was advocating for at 151 months. Based on the totality of those circumstances and looking at the Gonzalez-Aguilar case, that is the one the United States is relying on in support of its position that it did, number one, did not breach the plea agreement, but number two, even if this court was determined there was an error, it did not affect substantial rights because on that record, especially with the district court being very persuaded by the PSIR, direct quote saying he spent a lot of time considering and then systematically going through that PSIR, highlighting the previous convictions that the district court was troubled by when sentencing this defendant. I don't think there is a reasonable conclusion to go along with what's required in the Gonzalez-Aguilar case reference, a real possibility that he would have received a different sentence had the United States approached the sentencing in a different way. I had a second question for you. I apologize, yes. It's a little more technical. Okay. Did you submit your sentencing memorandum before or after Ferraz-Contreras moved for a sixth level reduction? I submitted mine, I believe it was on the same date. I do not have that record right in front of me, though, Your Honor. Usually our sentencing memos are due at the same time. Okay, thank you. So in summary, you have 35 seconds to wrap up. So thank you. Thank you, Judge. So in summary, Your Honor, we believe there was no breach of the plea agreement, definitely not under plain error review. The United States has the ability and the obligation to advocate for its position, which was in excess of about four years more than the defendant was asking for. We had a very concerning factual record reference, the medical records and the medical condition, and advocated its position accordingly. Appreciate your time, judges. Thank you. All right. Thank you, counsel. U.S. v. Ferraz-Contreras is submitted, and we'll take
judges: WARDLAW, GOULD, BENNETT